# Exhibit A

Exhibit A

Case 4:21-cv-00206-BLW   Document 1-2   Filed 05/10/21   Page 2 of 12

Electronically Filed
3/29/2021 9:13 PM
Seventh Judicial District, Bonneville County
Penny Manning, Clerk of the Court
By: Joseph Lugo, Deputy Clerk

Tingey, Joel E.

John M. Avondet, ISB No. 7438
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402-7495
Telephone: (208) 523-5171
Facsimile: (208) 529-9732
Email: javondet@beardstclair.com

Attorneys for the Plaintiffs

DISTRICT COURT, SEVENTH JUDICIAL DISTRICT, STATE OF IDAHO
COUNTY OF BONNEVILLE

| | |
|---|---|
| AARON J., AFFLECK M.D., P.A. d/b/a AFFLECK MD EYE CARE, an Idaho Professional Corporation; and, AARON J. AFFLECK M.D., an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CYNOSURE, LLC, a Delaware Limited Liability Company; and, ONEPLACE CAPITAL, A DIVISION OF BANK MIDWEST, an Iowa corporation, <br><br> Defendants. | Case No: CV10-21-1854 <br><br><br> COMPLAINT AND JURY DEMAND |

The Plaintiffs, Aaron J. Affleck M.D., P.A. d/b/a Affleck MD Eye Care (herein after referred to as AEC) and Aaron J. Affleck M.D., hereby complain and allege against the Defendants as follows:

**PARTIES**

1. The Plaintiff, AEC, is an Idaho Professional Corporation with its principal place of business located in Idaho Falls, Idaho.

2. The Plaintiff, Aaron J. Affleck M.D. (hereinafter referred to as Dr. Affleck), is an individual whose principal residence is located in Idaho Falls, Idaho.

Complaint and Jury Demand -- 1

3. The Defendant, Cynosure, LLC (herein after referred to as Cynosure), is a Delaware limited liability company with its principal place of business located in Westford, Massachusetts.

4. The Defendant, OnePlace Capital, A Division of Bank Midwest (herein after referred to as OnePlace), is an Iowa corporation with its principal place of business located in Des Moines, Iowa.

## JURISDICTION & VENUE

5. The Court has personal jurisdiction over the parties pursuant to Idaho Code Section 5-514.

6. Venue is proper in Bonneville County, Idaho pursuant to Idaho Code Sections 5-404.

7. Any forum selection clauses purporting to prohibited the commencement of an action within the tribunals of the State of Idaho are void as against public policy pursuant to Idaho Code Section 29-110.

## GENERAL FACTUAL ALLEGATIONS

8. In September 2020, AEC received a phone call from a Cynosure salesman who represented himself to be AEC's "dry-eye rep".

9. The Cynosure salesman, Peter Skidmore, asked AEC's receptionist for a time to schedule a demonstration for a new dry-eye product. AEC's receptionist scheduled a time for the Mr. Skidmore to come to AEC's clinic in Idaho Falls for a meeting.

10. Mr. Skidmore rescheduled the meeting due to a conflict he had. The AEC fit the meeting in despite the shortened schedule; however, there was not a lot of time for questions and Dr. Affleck had to get back to meeting with patients.

Complaint and Jury Demand -- 2

11. The meeting occurred on September 2, 2020 at AEC's clinic in Idaho Falls, Idaho. Mr. Peter Skidmore attended the lunch meeting and spoke with Dr. Affleck and his staff about a "revolutionary" treatment for dry-eye. Mr. Skidmore spoke about Cynosure's devices that were available specifically to treat dry-eye. He represented to those in attendance that the Cynosure device had recently been approved and that the device would also reduce wrinkles at the same time that it treated dry-eye.

12. Mr. Skidmore showed AEC attendees two videos. One was an animation of how the Cynosure device operated and worked under the tissue. The other video was of an ophthalmologist utilizing an earlier version of the Cynosure device to treat dry eye.

13. The device Mr. Skidmore represented was approved and intended to treat dry-eye was Cynosure's TempSure RF Generator with TempSure Envi.

14. During the meeting Mr. Skidmore represented that the treatment was not painful, though patients would feel a gentle, warming sensation.

15. Mr. Skidmore also represented that the procedure time lasted roughly 10 to 15 minutes.

16. Mr. Skidmore also represented the once trained, the technicians could do the treatment and the doctor would not have to be present on site. The parties discussed the fact that Dr. Affleck's surgical days were Tuesday and that it would be ideal for the technicians to perform the dry-eye treatments while Dr. Affleck was out of the office doing surgery.

17. Mr. Skidmore told AEC that the Cynosure devices cost approximately $150,000.00 plus $10,000.00 for marketing.

18. Mr. Skidmore's representations to AEC and Dr. Affleck were false at the time when they were made and the salesman knew they were false.

19. Mr. Skidmore informed AEC and Dr. Affleck that Cynosure was looking to move into the Eastern Idaho market and that Cynosure was looking for only one practice to utilize its devices and that AEC would need to be chosen by Cynosure. He represented that he would speak with Cynosure and recommend that Cynosure select AEC and Dr. Affleck.

20. During the meeting, Dr. Affleck told the Mr. Skidmore that he did not have the market for wrinkle treatment that the TempSure RF Generator and TempSure Envi could perform; however, Dr. Affleck expressed that he believed the dry-eye treatment was something that he could use in his practice as many of his patients required treatment for dry-eye. Mr. Skidmore expressed that the wrinkle treatment would be something to think about later and do on the side.

21. Mr. Skidmore assured Dr. Affleck that the TempSure RF Generator and TempSure Envi was designed for treating dry-eye.

22. The next morning, on September 3, 2020, Mr. Skidmore arrived at AEC and approached Dr. Affleck, as he was in-between patients, and informed Dr. Affleck that AEC had "just got approved" by Cynosure to use the TempSure RF Generator and TempSure Envi device. Mr. Skidmore reiterated that the TempSure RF Generator and TempSure Envi had just been approved for use by the FDA and led AEC and Dr. Affleck to believe that the TempSure RF Generator and TempSure Envi device had been approved for treating dry-eye.

23. Mr. Skidmore handed Dr. Affleck a stack of documents for Dr. Affleck to sign. Included in the stack of documents was the first page of the Cynosure Customer Purchase Agreement, an Equipment Finance Agreement, Personal Guaranty, Early Commencement Agreement, Authorization for Automatic Payment, and Insurance

Complaint and Jury Demand -- 4

Information for the Defendant, OnePlace. Dr. Affleck signed or initialed every page contained in the stack of documents he was provided by Mr. Skidmore. However, Mr. Skidmore did not provide AEC or Dr. Affleck with any copies of the signed paperwork until after a dispute arose.

24. Dr. Affleck was not provided a copy of pages 2 & 3 of the Cynosure Customer Purchase Agreement on September 3, 2020, by Mr. Skidmore. He was not provided copies of any documents. Whenever Dr. Affleck signs a contract he ordinarily has his business manager scan the contract for his own records. This did not occur with respect to the Cynosure Customer Purchase Agreement because Mr. Skidmore did not provide AEC or Dr. Affleck with a copy of the documents at the time of signing.

25. Dr. Affleck told Mr. Skidmore that his clinic would not be ready to receive the TempSure RF Generator and TempSure Envi device until November 2020. Mr. Skidmore assured Dr. Affleck that orders were backed up and that the November 2020 timeframe would work.

26. The TempSure RF Generator and TempSure Envi device showed up at AEC in September 2020.

27. In addition to receiving the TempSure RF Generator and TempSure Envi device, Cynosure was to provide marketing services and training on how to use the Cynosure products. Stephanie Affleck, AEC's office manager, was contacted by Jenna with Cynosure's marketing department. Jenna informed Ms. Affleck that patients would need to be charged more than was discussed with Mr. Skidmore in order to cover the loan payments for the device.

28. When AEC contacted Cynosure and informed it that AEC was ready to receive said marketing and training services, there were delays. AEC informed Cynosure that it

was ready to be trained on how to do the dry-eye treatment with the TempSure RF Generator and TempSure Envi device. Jenna informed Ms. Affleck that the TempSure RF Generator and TempSure Envi device could not treat dry-eye and that the use of said products would be considered "off-label". Jenna stated that the marketing group could not do AEC's marketing for dry-eye because the use of the TempSure RF Generator and TempSure Envi device would be off-label.

29. AEC and Dr. Affleck emailed the Cynosure salesman about how the salesman had told AEC and Dr. Affleck that the TempSure RF Generator and TempSure Envi device would treat dry-eye.

30. Mr. Skidmore responded with a request for Dr. Affleck to call him.

31. Eventually, Cynosure sent an individual to train AEC on the wrinkle treatment. The trainer did not train AEC on how to perform the "off-label" dry-eye treatment. During the training, the trainer told Dr. Affleck and his staff that it would be recommended that Dr. Affleck be in the room performing or observing the treatment.

32. Jenna attempted to get marketing going for AEC. AEC expressed concerns over the fact that dry-eye treatment was off-label. Mr. Skidmore did not respond to Dr. Affleck's email correspondence other than to invite a phone call. Jenna, however, set up a phone call with her, Mr. Skidmore, and his supervisor.

33. During the phone call, Mr. Skidmore did not speak or explain his actions vis-à-vis AEC other than when he was asked how much the loan payment was. Jenna stated that she had found another marketing company to market the off-label dry-eye treatment.

34. The Cynosure trainer refused to perform any training on dry-eye treatment because it was an off-label use of the TempSure RF Generator and TempSure Envi device. She informed AEC and Dr. Affleck that there were videos on youtube.com where

they could learn how to use the TempSure RF Generator and TempSure Envi device for dry-eye treatments.

35. Dr. Affleck and AEC staff watched the youtube videos that were available and performed three treatments for dry-eye, each patient who underwent the treatment stated that the treatment was painful and that there was no improvement in symptoms of dry-eye.

36. Dr. Affleck and AEC have concluded that the TempSure RF Generator and TempSure Envi device cannot be used for dry-eye treatment.

## COUNT ONE: FRAUD IN THE INDUCEMENT

37. All prior paragraphs are incorporated by reference.

38. The Defendants, through their agent, made false representations of fact to AEC and Dr. Affleck in September 2020 concerning the TempSure RF Generator and TempSure Envi device and its ability, approval, and intended use for treating dry-eye.

39. The statements made by the Defendants, through their agent, Mr. Skidmore, were false at the time they were made in September 2020 to AEC and Dr. Affleck.

40. The Defendants' false statements were material to AEC and Dr. Affleck deciding to acquire the TempSure RF Generator and TempSure Envi device.

41. The Defendants were aware that the TempSure RF Generator and TempSure Envi device was not approved by the FDA for use in treating dry-eye, that use of the foregoing would have been considered "off label", that it could not provide training or marketing for dry-eye treatments using the foregoing, and that the primary purpose of the foregoing was to treat wrinkles and not dry-eye.

42. The Defendants intended for AEC and Dr. Affleck to rely on their representations concerning the utility of the TempSure RF Generator and TempSure Envi device to treat

dry-eye. AEC and Dr. Affleck informed the Defendants, through their agent, Mr. Skidmore, as much on September 2, 2020.

43. AEC and Dr. Affleck were ignorant of the falsity of the Defendants' statements concerning the TempSure RF Generator and TempSure Envi device.

44. AEC and Dr. Affleck did, in fact, rely on the statement by the Defendants, through their agent, concerning the TempSure RF Generator and TempSure Envi device and said reliance was justifiable under all the circumstances.

45. AEC and Dr. Affleck have been injured in an amount to be established at trial but in an amount no less than $158,470.00.

46. The Defendants' fraud entitles AEC and Dr. Affleck to rescind any contracts and for the parties to be placed in their respective positions prior to September 2020.

47. AEC and Dr. Affleck have been required to retain Beard St. Clair Gaffney PA in order to protect their rights. AEC and Dr. Affleck are entitled to seek their attorney's fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code Sections 12-120 and 12-121, and any other rule or applicable statute.

## COUNT TWO: BREACH OF WARRANTY (FITNESS FOR A PARTICULAR PURPOSE)

48. All prior paragraphs are incorporated by reference.

49. As of September 2020, the Defendants had reason to know of the Plaintiffs' particular purpose for which the TempSure RF Generator and TempSure Envi device were being considered for purchase, e.g., that the TempSure RF Generator and TempSure Envi device was approved for treating dry-eye.

50. The Plaintiffs relied upon the Defendants' skill or judgment to select or furnish suitable goods and the Defendants assured the Plaintiffs that the TempSure RF Generator

and TempSure Envi device was approved for and fit to serve the particular purpose of treating dry-eye.

51. The Defendants breached the implied warranty of fitness for a particular purpose in selecting, marketing, and selling the TempSure RF Generator and TempSure Envi device to the Plaintiffs.

52. The Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $158,470.00.

53. AEC and Dr. Affleck have been required to retain Beard St. Clair Gaffney PA in order to protect their rights. AEC and Dr. Affleck are entitled to seek their attorney's fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code Sections 12-120 and 12-121, and any other rule or applicable statute.

### COUNT THREE: BREACH OF EXPRESS WARRANTY

54. All prior paragraphs are incorporated by reference.

55. The Defendants made express affirmations of fact or promises to the Plaintiffs relating to the TempSure RF Generator and TempSure Envi device insofar as the Defendants expressly represented that the foregoing were approved to treat dry-eye and that the foregoing were suitable to treat dry-eye.

56. The Defendants' affirmations of fact and promises concerning the TempSure RF Generator and TempSure Envi device became a basis of the bargain between the Plaintiffs and the Defendants, thereby creating express warranties that the goods conformed to the description of the Defendants.

57. The TempSure RF Generator and TempSure Envi device is not approved to treat dry-eye nor is it suitable to treat dry-eye.

58. The Defendants have breached their express warranties to the Plaintiffs as a consequence of the foregoing.

59. The Plaintiffs have been damaged in an amount to be determined at trial but in no event less than $158,470.00.

60. AEC and Dr. Affleck have been required to retain Beard St. Clair Gaffney PA in order to protect their rights. AEC and Dr. Affleck are entitled to seek their attorney's fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code Sections 12-120 and 12-121, and any other rule or applicable statute.

## COUNT FOUR: BREACH OF CONTRACT

61. All prior paragraphs are incorporated by reference.

62. The parties entered into contracts on September 3, 2020.

63. The Plaintiffs have performed their obligations arising under the contracts and are not in material breach.

64. Implied in every contract is a covenant that the parties will act in good faith and deal fairly with each other with respect to the terms of the contract.

65. The foregoing conduct by the Defendants, as alleged by the Plaintiffs, by the Defendants constitutes a breach of the terms of the contracts.

66. The Plaintiffs have been harmed as a direct and proximate result of Defendants' conduct in an amount to be established at trial.

67. AEC and Dr. Affleck have been required to retain Beard St. Clair Gaffney PA in order to protect their rights. AEC and Dr. Affleck are entitled to seek their attorney's fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code Sections 12-120 and 12-121, and any other rule or applicable statute.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

1. Entry of judgment for the Plaintiffs and against the Defendants in an amount to be determined at trial.

2. Entry of judgment rescinding or otherwise voiding the parties' contracts, entered into on September 3, 2020, and restoring the parties to their respective positions prior to entering the contracts.

3. Awarding the Plaintiffs their attorney's fees and costs pursuant to Idaho Rule of Civil Procedure 54, Idaho Code Sections 12-120 & 12-121, and any other applicable rule or statute.

4. Awarding the Plaintiffs any other relief deemed just and equitable under the circumstances.

**THE PLAINTIFFS DEMAND TRIAL BY JURY PURSUANT TO RULE 38 OF THE IDAHO RULES OF CIVIL PROCEDURE ON ALL ISSUES SO TRIABLE**

DATED: March 29, 2021

/S/ John M. Avondet
John M. Avondet
Of Beard St. Clair Gaffney PA
Attorneys for the Plaintiffs